**4–COUNTY ELECTRIC POWER AS-
SOCIATION, Plaintiff/Counter-
defendant,**

v.

**TENNESSEE VALLEY AUTHORITY,
Defendant/Counterplaintiff,**

v.

**R. Penn TAYLOR, et al.,
Counterdefendants.**

**No. 4:95CV158LN.**

United States District Court,
S.D. Mississippi,
Jackson Division.

June 3, 1996.

David Lawrence Sanders, Mitchell, McNutt, Threadgill, Smith & Sams, Columbus, MS, James L. Carroll, Mitchell, McNutt, Threadgill, Smith & Sams, Jackson, MS, for Plaintiff.

James E. Fox, Robert C. Glinski, Thomas C. Doolan, and Harriet A. Cooper, Tennessee Valley Authority, Knoxville, TN, for Defendant.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

There are pending in this cause for decision two motions by plaintiff 4–County Electric Power Association (4–County), one for summary judgment on counts three through six of its complaint against defendant Tennessee Valley Authority (TVA), and the other to dismiss or, alternatively, for summary judgment on the counterclaims asserted against it by TVA. There has also been filed a cross-motion by TVA for summary judgment on each of plaintiff's claims in this case. The court has thoroughly reviewed the parties' submissions on these motions and concludes, for the reasons that follow, that 4–County's motions should be denied and TVA's motion should be granted.

The following undisputed facts are gleaned from the parties' memoranda and supporting affidavits. TVA, a federal agency organized and existing under the TVA Act, 16 U.S.C. § 831$l$ –831dd, maintains and operates one of the nation's largest electric power systems as part of a program to fulfill its mission for the development of the Tennessee Valley region's resources and economy. It produces and sells electricity to 160 municipal and cooperative distributors for millions of residential, commercial, industrial and governmental customers, and also sells electricity directly to a number of industrial customers with large or unusual loads and several federal agency installations. The area in which TVA supplies power covers about 80,000 square miles, which includes most of Tennessee, northern Alabama, northeastern Mississippi, southwestern Kentucky and parts of Georgia, North Carolina and Virginia, and has a population of over 8,000,000. The plaintiff in this case, 4–County, is a Mississippi rural electric cooperative corporation which sells and distributes power to its members, which are retail customers in eastern and northeastern Mississippi. For nearly sixty years, 4–County has been a distributor of TVA power pursuant to a series of wholesale power supply contracts, contract renewals and amendments. Like each of the preceding contracts between the parties, the current contract, executed October 31, 1978 for a twenty-year term, requires that TVA supply and 4–County purchase from TVA all of its power for distribution to 4–County's customers and authorized either party to terminate the contract on four years' notice to the other. In 1989, however, that changed.

During the fall of 1989, as a result of an extensive construction program undertaken by TVA to assure an adequate power supply for the TVA region, TVA had a temporary surplus of generating capacity. In light of that surplus, the TVA Board developed and authorized the "Growth Credit Program" (GCP), a special incentive program for TVA distributors which was intended to attract

new industries to the TVA area and to encourage existing industries and businesses to expand. Under this program, participating distributors apply direct credits against the power bills of qualified industries, i.e., new industries whose loads exceed 1000 kw and existing industries or businesses which increase their loads by 1000 kw or more, and are reimbursed for those credits and further retain an additional amount equal to ten percent of all credits passed on to their customers. The program commenced October 1, 1989 and, though initially designed to last six years, was subsequently extended by two years through September 30, 1997.

As reflected by contemporaneous TVA Board minutes, when the GCP was devised, the TVA Board determined that even though the

> net revenue from the new load development [was] expected to more than offset program costs and provide a net benefit to the TVA system[,] ... [s]ince the credits [would] be funded by TVA in anticipation of long-term benefits accruing to all ratepayers from increased load growth, the program agreement for distributors [would] include a wholesale power contract amendment providing that under no circumstances [would] the contract end upon less than 10 years' notice.

Thus, 4–County, along with each of TVA's distributors, was offered an opportunity to participate in the GCP in exchange for its agreement to extend the termination notification period from four to ten years. 4–County agreed and the parties entered into a supplement to the power contract, incorporating these terms. Thereafter, 4–County began receiving the benefits of the GCP program and to this date is still participating in the GCP.

In December 1993, some three years after its execution of the GCP supplement, 4–County, in accordance with its contractual right, gave TVA notice of termination of the power contract effective December 6, 2003.[1] Thereafter, in 1994, TVA implemented what it called the "Enhanced Growth Credit Pro-

gram" (EGCP), a program similar in form and purpose to the GCP. Like the GCP, the EGCP, as proposed and adopted, was "not [made] available through distributors that [did] not have, and maintain, a 10–year contractual commitment to purchase their power requirements from TVA." Consequently, the EGCP was not made available to 4–County which, because of its 1993 notification of termination, no longer had a ten-year contractual commitment to purchase its power from TVA.

Upon TVA's refusal to allow 4–County the opportunity to participate in the EGCP, 4–County attempted over a period of time to negotiate with TVA for approval of some form of participation in the EGCP; but TVA has advised that 4–County may not participate in and receive the benefits of the EGCP unless it withdraws its termination notice and becomes contractually committed to TVA for ten years. Unable to secure a resolution from TVA that would allow its participation in the EGCP without its having to withdraw its notice of termination, 4–County filed the present action against TVA seeking damages, and asking that it either be relieved of its remaining contractual obligations to TVA or that TVA be enjoined to allow 4–County to participate not only in the EGCP, but in any and all other incentive programs which TVA might in the future offer its distributors.

Essentially, 4–County complains in this case that while it enticed new industrial customers to settle within its service area with the prospect of receiving the full benefits of not only the GCP, but also the EGCP and any other TVA-sponsored incentive programs, TVA refuses to allow 4–County its "right" to participate in the EGCP solely because 4–County gave notice of termination of its power contract. It objects that as a result of TVA's actions, it is now contractually obligated to purchase all of its power from TVA through December 6, 2003 without receiving the discounts given TVA's other wholesale distributors and thus is at a competitive disadvantage in maintaining existing

---

1. According to 4–County, it terminated the contract because Congress' passage of the Energy Policy Act and subsequent efforts to deregulate the power industry resulted in increased competition and lower power prices in the marketplace.

industrial customers and securing new industrial customers.

In count one of its complaint against TVA, 4–County alleges that TVA's refusal to allow it to participate in the EGCP is not related to any credible concern over the need for adequate revenues but is instead punitive, so that upon review under § 706 of the Administrative Procedures Act, the court should set aside TVA's refusal as "arbitrary, capricious [or] an abuse of discretion." 5 U.S.C. § 706. Plaintiff charges in count two that TVA's actions violate TVA's duty under § 11 of the Tennessee Valley Authority Act to distribute its power "equitably among the states, counties, and municipalities within transmission distance" for the purpose of benefiting domestic and rural consumers. 16 U.S.C. § 831j. Claims for breach of contract, breach of the implied covenant of good faith and fair dealing and breach of fiduciary duty are set forth in counts two, three and four, respectively, and count five alleges that the power contract and supplement, if construed as permitting TVA's refusal to allow 4–County's participation in the EGCP, are substantively unconscionable. Again, 4–County demands as relief a judgment for damages, including attorneys' fees and prejudgment and postjudgment interest, as well as declaratory and injunctive relief voiding the power contract and supplement and/or prohibiting TVA from excluding 4–County from participating in future incentive programs.

4–County's motion for summary judgment seeks judgment on 4–County's claims for breach of contract, breach of the implied duty of good faith and fair dealing and breach of fiduciary duty. Yet 4–County also argues that the 1989 supplement should be declared void and unenforceable for failure of consideration and that TVA should be equitably estopped from denying 4–County participation in the EGCP.[2] TVA has responded to this motion and has filed its own motion for summary judgment directed to each of 4–County's causes of action. Each will be considered in turn.

■ TVA argues that in approving the GCP and establishing the conditions on which the program would be made available to distributors of TVA power, TVA exercised two of its statutorily authorized functions, rate making and setting terms for the disposition of government power, and that its actions are therefore exempt from judicial review. Plaintiff acknowledges that by virtue of TVA's having been granted by Congress full discretionary authority with respect to setting rates, TVA's rate-making decisions are beyond the scope of judicial review under the APA. *See* 5 U.S.C. § 701(a) (agency actions reviewable unless (1) statutes preclude judicial review or (2) agency action is committed to agency discretion by law); 16 U.S.C. § 831i ("Board is authorized to include in any contract for the sale of power such terms and conditions, including resale rate schedules ... as in its judgment may be necessary or desirable for carrying out the purposes" of the TVA Act); *Mobil Oil Corp. v. TVA,* 387 F.Supp. 498 (N.D.Ala.1974). It contends, however, that TVA cannot evade judicial review in this action because the decision of which 4–County complains in this lawsuit, i.e., not to allow 4–County's participation in the EGCP, was not part of any legitimate rate-setting authority by TVA but rather was a "reactive, punitive and retaliatory" response to 4–County's termination notice. In other words, 4–County takes the position that TVA's decision to extend the EGCP only to distributors who had and maintained a ten-year contractual commitment to purchase their power from TVA was not related to any legitimate concern for the need to recover costs incurred in providing service and hence is not accurately characterized as "rate making."

■ Plaintiff acknowledges that where there exists a rational connection between TVA's need for revenue sufficient to fulfill the purposes of the TVA Act on the one hand, and the charges or conditions imposed, on the other, then TVA's decision with respect to such charges or conditions is unre-

---

**2.** Neither of these claims is identified in 4–County's complaint, a point which TVA was quick to make. Nevertheless, because the court concludes that the claims are factually and/or legally unsupported in any event, the court need not consider whether the claims are, in fact, properly before the court.

viewable. But it argues that TVA's refusal to allow it access to the EGCP absent a ten-year commitment of 4–County's *full load* is not even arguably related to the recovery of TVA's costs or appropriate margins, and is therefore beyond the scope of TVA's rate-making authority and hence subject to judicial review. In the court's opinion, however, determinations about the level of rates necessary to recover the various costs of operating TVA's power system, as well as the terms and conditions of TVA's power contracts, including specifically the length of contracts, are part of TVA's unreviewable rate-making responsibilities. *See Siegleman v. TVA,* [New Matters] Fed.Util.L.Rep. (CCH) ¶ 13,-448, at 22,163 (N.D.Ala. Aug. 18, 1988) ("[c]ertainly a specification as to persons or entities to whom or which a particular rate is available ... logically falls within this broad rate-making authority"). Yet in any event, while plaintiff has undertaken to demonstrate that TVA's imposition of a ten-year continuing commitment by distributors to purchase their power requirements from TVA as a condition for participation in the EGCP was not in fact necessary for TVA's recovery of costs, the proof does not suggest to the court that TVA's decision in this regard was not pursuant to its legitimate concern over the recovery of costs. It would follow then, even under plaintiff's view of the law, that this was, indeed, a rate-making decision for which judicial review is unavailable.

■ Furthermore, even were TVA's decision within the scope of proper judicial review, the proof before the court by no means demonstrates that TVA's actions were arbitrary or capricious, or an abuse of its discretion. Plaintiff obviously disagrees with TVA's judgment as to the necessity and desirability of inclusion of the ten-year commitment requirement as part of the EGCP; but notwithstanding plaintiff's arguments to the contrary, TVA could certainly have reasonably concluded that imposition of such a condition was a reasonable means of ensuring full recovery of its costs. Accordingly, plaintiff's claim for violation of the APA fails.[3]

■ Plaintiff charges additionally that TVA, in conditioning the availability of the EGCP on the distributor's agreement to remain a TVA customer for at least ten years, violates § 11 of the TVA Act, which states, in pertinent part:

> It is declared to be the policy of the Government so far as practical to distribute and sell the surplus power generated at Muscle Shoals equitably among the States, counties and municipalities within transmission distance. This policy is further declared to be that the projects herein provided for shall be considered primarily as for the benefit of the people of this section as a whole and particularly the domestic and rural consumers to whom the power can economically be made available, and accordingly that sale to and use by industry shall be a secondary purpose, to be utilized principally to secure a sufficiently high load factor and revenue returns which will permit domestic and rural use at the lowest possible rates and in such manner as to encourage increased domestic and rural use of electricity.

4–County argues that in failing to make the EGCP available to 4–County, "while offering the service to virtually every other distribution cooperative on its system, and by offering the same service to its own directly-served industries (DSIs) on substantially less onerous terms, TVA has violated the express purpose of the Act—that power be equitably distributed." TVA argues, and 4–County does not dispute that TVA has offered 4–County the opportunity to participate in the EGCP on exactly the same basis as all other distributors, i.e., subject to the condition of its agreeing to a ten-year commitment. In fact, every distributor which is participating in the program (147 out of 160 distributors) agreed to the conditions imposed by TVA. Still, 4–County submits that "TVA's argument invites the court to elevate form over substance, ignoring the discriminatory effect of TVA's actions," which violate § 11. Plaintiff's position is without merit. As TVA correctly observes, there is nothing in the policy

---

**3.** To the extent that 4–County alleges that TVA breached its contract with 4–County by excluding it from participation in the EGCP, that breach of contract claim is cognizable separately from plaintiff's APA claim.

statement of § 11 that requires TVA to offer 4–County an incentive program on terms different from those offered other distributors of TVA power.[4] And contrary to 4–County's insistence, there is nothing discriminatory in the terms of TVA's offering of EGCP to distributors, including 4–County.

■ Plaintiff's further contend that TVA's offering of the EGCP to its directly-served industrials without imposing the same ten-year commitment condition as applied to its distributors is discriminatory, in violation of § 11. However, as TVA notes, since TVA's wholesale customers (distributors) are in a different class than TVA's directly-served retail customers, there is no basis for a claim of discrimination. *See* 16 U.S.C. § 831k ("electric power shall be sold and distributed to the ultimate consumer without discrimination as between consumers of the same class").[5] Plaintiff's claim against TVA for violation of the TVA Act will be dismissed.

■ The precise theory of 4–County's breach of contract claim is not clear to the court. In the complaint, 4–County charges that TVA's refusal to allow it to participate in the EGCP violated TVA's "contractual duty" to continue serving 4–County's load for the duration of the contract term "with the same programs and incentives available to other wholesale customers," and further constituted a breach of TVA's "contractual obligation to provide service at rates and charges generally applicable to other wholesale customers." In other words, plaintiff's breach of contract claim proceeds from the premise that it had a contractually guaranteed right to participate in the EGCP, and any other

incentive programs that TVA might offer for that matter. Or stated conversely, TVA had a contractual duty to make the EGCP and any other incentive programs available to 4–County. But the court's review of the evidence discloses no such right on the part of 4–County or duty on the part of TVA.

So far as the court can tell, 4–County has asserted two similar, but alternative bases for its claim to a contractual "right" to participate in the EGCP. First, it asserts that the EGCP was merely an extension of the GCP such that its obvious right to participate in the GCP gave it the right to participate in the EGCP. However, it is clear from the evidence that the EGCP was (and is) a separate program from the GCP. To substantiate its position on this issue, plaintiff has submitted the affidavit of one of its experts, Robert M. Gross, Jr., who espouses his opinion that the EGCP was but a "logical extension" of the GCP, given the similarities of form and purpose of the programs. But it does not follow from the fact that the programs are similar—or even substantially similar, accepting Gross' characterization—that they are the "same" program so that TVA's contractual obligation to allow 4–County's participation in one extends to the other. That fact is that while these two programs are in some respects similar, they are different in others and are not properly considered the same program. Indeed, that the two are different programs is demonstrated by the fact that whereas the GCP was originally to last for a period of six years, through September 30, 1995, which date was later extended by two years to September 30, 1997, the five-year EGCP was first offered in 1994,

---

4. In fact what plaintiff contends is that the equitable distribution clause of § 11 is violated by TVA's setting of a term or condition for participation in the EGCP which, according to 4–County, is not functionally related to the cost of the EGCP. While this is arguably a challenge to the fairness or equity of TVA's offering of the EGCP, it is not a claim that TVA did not equitably distribute power "among the States, counties, and municipalities" in its service area and accordingly is not a viable claim under § 11.

5. 4–County argues that TVA could have secured the intended growth benefits of the EGCP by requiring a long-term contract agreement from the industrial customers served by the EGCP and

not for the entire load of the distributor, as it did with its own directly-served industrials. 4–County, in fact, acknowledges that "without such a commitment from the EGCP customer, TVA cannot be assured that the customer will ever pay the full embedded cost rate, since the customer could move its operations or shut down the plant when its EGCP discount expires." But it is the court's understanding that TVA served 4–County, which in turn served its own customers and that TVA, having no relationship with 4–County's customers, would not have been in a position to require any commitment from 4–County's customers.

so that the two programs have existed and will exist concurrently for a number of years.

Plaintiff's alternative assertion of entitlement to the EGCP stems from its claimed "expectation" at the time of executing the supplement that it would be given the opportunity to take part not only in the GCP, which was the subject of the supplement, but in all future incentive programs offered by TVA to its wholesale customers, including the EGCP. Indeed, 4–County declares that it *"expected that it would be allowed to participate in the GCP and all other incentive programs offered by TVA, including any extension of the GCP past the term stated in the Supplement"* (emphasis added). 4–County has not attempted to support its claimed expectation by reference to anything that was done or represented by TVA during its explanation of and/or the offer of the GCP supplement that would have led 4–County to believe or expect that TVA was offering 4–County anything other than an opportunity to participate in the *GCP.* Nor does it point to any language in the supplement itself that could reasonably have given rise to such an expectation by 4–County. In fact, the evidence reflects that TVA did not affirmatively represent or agree that the supplement authorized 4–County's participation in anything other than the GCP. For example, in August 17, 1989 correspondence from TVA to its distributors, including 4–County, concerning the program, TVA explained that "the growth credit program" which had been proposed "would be made available as of October 1, 1989, and would remain in effect for six years.... Beginning with the third year, the credits would begin to phase out and would end as of September 30, 1995." TVA further explained that "[i]n recognition of the substantial investment by TVA in building load on the distributor's system, a part of the arrangement would be an amendment to the wholesale power contract providing that the distributor would not cease to be a distributor of TVA power upon less than 10 years' notice." Thereafter, once the program received approval by the TVA Board, TVA sent a proposal to 4–County which explained how the GCP would work "[d]uring the six years of the program," and provided that "the proposed agreement amends the *Term of Contract* section of the Power Contract such that the Power Contract will neither expire nor be terminated upon less than 10 years' prior written notice." The proposal said nothing about any future incentive programs or suggested that the GCP benefits would apply beyond six years.

The only language to which 4–County does point as implicitly supportive of its contention that the contract entitled it to participation in future programs is contained in section 15 of the supplement, but plaintiff's reliance on this language is obviously misplaced. The language to which plaintiff refers is as follows:

Notwithstanding any other provisions of this section, either party may terminate this contract at any time upon not less than 10 years' prior written notice. *If Cooperative should give notice of termination hereunder, TVA shall be under no obligation from the date of receipt of such notice to make or complete any additions to or changes in any transformation or transmission facilities for service to Cooperative unless Cooperative agrees to reimburse TVA for its nonrecoverable costs in connection with the making or completion of such additions or changes.* (Emphasis added).

Plaintiff reasons that because this provision purports to address TVA's rights in the event 4–County gave notice of termination and does not include any right to refuse 4–County the option of participating in growth incentive programs, then it follows that no such right exists. However, this language clearly does not tend to demonstrate that 4–County had or has a contractual right to participate in any TVA incentive program; rather, as TVA points out, this provision establishes only that upon 4–County's giving its notice of termination, TVA would be relieved of the obligation it would otherwise have had with respect to 4–County's transformation and/or transmission facilities. The cited language does not impose on TVA any additional obligations, such as offering 4–County the opportunity to take part in special incentive programs. Nor does it grant to 4–County any additional rights.

■ In apparent recognition that the parties' agreement may not address the issue of the availability of future incentive programs, 4–County next argues that because it is the custom and practice in the utilities industry to make future programs available to "all requirements" customers, such as 4–County, then the contract is thereby rendered ambiguous as to 4–County's right to participate in future programs; this ambiguity, 4–County continues, may reasonably be resolved by reference to and reliance on the industry custom and usage to which it refers. In the court's view, the fact that the contract does not explicitly require TVA to offer to 4–County the chance to participate in all incentive programs and is instead silent on this issue does not render the contract ambiguous, even in the face of plaintiff's proof of custom and usage; that is, even having considered plaintiff's evidence of custom and usage, the court does not find such evidence to render the contract ambiguous. But it is well established that even where a contract is not ambiguous, if it is silent on a given issue, then evidence of industry custom and usage may be admitted to explain or supplement the contract, so long as such evidence is consistent with and does not contradict the express terms of the contract. Here, plaintiff has presented proof which it submits establishes that the generally accepted custom and practice in the utility industry with respect to "all requirements" contracts requires TVA to offer all incentive programs to its "all requirements" customers on a nondiscriminatory basis. TVA denies that the alleged custom and practice of other electric suppliers and public utility commissions with regard to a particular matter would restrict the TVA Board in deciding, pursuant to its authority under the TVA Act, the conditions on which an incentive program will be made available since TVA's mission, which is dictated by Congress, is not necessarily the same as that of other public utilities. The court need not decide, however, whether the customs and usages of other utilities would be relevant to the interpretation of a TVA contract since plaintiff's evidence of custom and usage fails to address the industry custom and usage and/or practice in the precise situation here presented. That is, plaintiff

has offered no evidence to show that there is a custom and practice for an electric supplier to make a new incentive program available to a distributor which has already given notice of termination.

The undisputable facts of record fail to establish that TVA had any contractual obligation to allow plaintiff's participation in the EGCP, and to the contrary, reflect that no such duty existed. Therefore, plaintiff cannot succeed on its claim for breach of contract and summary judgment will therefore be entered for TVA on this claim.

■ In addition to its claim that TVA breached express terms of the parties' contract, 4–County charges that TVA breached its implied duty of good faith and fair dealing in "several ways," as follows: (1) TVA denied 4–County participation in the EGCP solely on the basis that 4–County gave TVA notice of termination under the contract; (2) TVA failed to "candidly disclose to 4–County the consequences it apparently intended if 4–County dared to give notice of termination" under the contract; and then, (3) after its initial refusal to allow 4–County participation in the EGCP, TVA thereafter refused to attempt to work out an agreeable compromise that would allow 4–County to participate in the EGCP. None of these claims is sustainable on the facts presented.

As the foregoing discussion illustrates, TVA acted in accordance with its rights and duties under the express terms of the contract; it not only made the GCP available to 4–County in accordance with the terms of the TVA Act, but it also made the EGCP available to 4–County on the same terms on which it was made available to each of TVA's other wholesale power distributors. And nothing in the power contract or supplement contractually obligated TVA to do more than that. That is, while 4–County insists that it was *excluded* from economic incentive programs, and the EGCP in particular, the fact of the matter is, the contract or supplement did not require that TVA *include* 4–County in any economic incentive programs *other than the GCP*, in which 4–County has been fully participatory. If, as it contends, 4–County agreed to extend the notice provision to ten years in order to participate in incentive programs

other than the GCP, that was its subjective intention and one which was not expressed in the negotiations or the ultimate agreement of the parties.

4–County's assertion that TVA did not "candidly disclose" in connection with its 1989 GCP proposal that 4–County would not be permitted participation in the EGCP in the event 4–County were to give notice of termination of the power contract likewise will not support a finding that TVA acted other than in good faith. While plaintiff maintains that the discussions leading up to the execution of the supplement gave 4–County no reason to believe that it would be excluded from future participation in incentive programs because of notice of termination, there is nothing to indicate that 4–County was given reason to believe that it would receive the benefit of future incentive programs, even if it did not satisfy TVA's requirements for participation in such programs. The terms of the GCP which was offered to plaintiff, as well as the conditions for participation, were fully disclosed to plaintiff. And, TVA had no duty to advise 4–County about all potential effects and ramifications which could follow from 4–County's exercise of its right to terminate the contract.[6]

Plaintiff's final claim that TVA violated its duty of good faith and fair dealing by failing to cooperate in working out an "agreeable compromise" that would allow 4–County to participate in the EGCP is not actionable. TVA had no such duty under the contract or otherwise to compromise with the plaintiff.

■ 4–County's allegation of breach of fiduciary duty also fails as a matter of fact and law. That count of the complaint charging breach of fiduciary duty asserts rather vaguely that TVA has "used its power to injure 4–County and to gain a preferential interest over 4–County by denying 4–County participation in the EGCP." Somewhat more to the point, plaintiff recites in its memorandum in support of its motion for summary judgment as follows:

> TVA has sought to utilize its power and control to gain a preferential advantage over 4–County. This is evidenced by the one-sided negotiations between the parties regarding the Notice of Termination provision in the contract, as well as TVA's retaliatory and punitive actions towards 4–County in response to 4–County's Notice of Termination. TVA refused to consider any alternative proposals by 4–County (as it had promised) and refused to submit any viable counter-proposals. Instead, TVA used its superior bargaining position to attempt to force 4–County into revoking its Notice of Termination.

In other words, the same conduct which 4–County asserted as violative of TVA's duty of good faith and fair dealing also provides the basis of plaintiff's allegations of breach of fiduciary duty. TVA denies that has any fiduciary relationship with 4–County, or any of its distributors, pointing out that its purpose as defined by the TVA Act is to function not in the interests of or for the benefit of its distributors, but rather "for the benefit of the people of the section as a whole and particularly the domestic and rural consumers to whom the power can economically be made available." 16 U.S.C. § 831j. It is further recalled that the TVA Act grants TVA rate-making discretion, see 16 U.S.C. § 831i, the exercise of which might be significantly curtailed were TVA required to put distributor interests ahead of all other objectives. Even assuming that there might be some possible basis for finding the existence of a fiduciary relationship between TVA and 4–County, a circumstance which the court perceives as belied by provisions of the TVA Act, TVA did not have a fiduciary obligation to forego altogether its ten-year notice of termination requirement as a condition for EGCP participation by its distributors, and certainly had no fiduciary duty to extend the EGCP to 4–County, by way of original offer or compromise, on terms more favorable

---

6. Moreover, plaintiffs have not alleged, nor is there any proof to support a finding that TVA, at the time of negotiations over the supplement in 1989, knew or anticipated that some five years later, it would develop yet another incentive program for distributors to which it would attach the condition of a ten-year commitment from its distributors. Thus, it could not have failed to "candidly disclose" that of which it had no knowledge.

than those offered to other distributors. Nor was there a fiduciary duty to apprise 4–County at the time of its execution of the supplement in 1989 that 4–County's future exercise of its right to terminate the contract could potentially one day have negative consequences.[7]

Plaintiff alleged in its complaint a claim that the power contract and supplement are unconscionable because if they are interpreted as urged by TVA, then "[f]or eight years, 4–County will not have access to the same EGCP that is available to virtually every other TVA distributor, and will have no recourse to other suppliers." While plaintiff did not include this unconscionability claim in its motion for summary judgment, TVA did, making a most compelling argument that the contract and supplement are not unconscionable in the least.[8] Plaintiff made no response to that aspect of TVA's motion and thus has apparently conceded TVA's motion with respect to that claim.[9]

■ That brings the court to plaintiff's final, unpled claims of failure of consideration and equitable estoppel. Even assuming that the plaintiff's putative assertion that the supplement should be declared void for failure of consideration is properly before the court, this is another claim on which the plaintiff cannot prevail. There simply is no viable claim for failure of consideration since there is no competent proof to indicate that the consideration for 4–County's agreeing to extend the period for termination notification from four to ten years was anything other than 4–County's participation in the GCP. In its complaint, in fact, 4–County recites that in 1989, TVA proposed to amend the power contract to allow 4–County's participation in the GCP program, stating, "4–County agreed to the amendment, consideration for which was 4–County's agreement to extend the Power Contract's Notice of Termination provision from 4 years to 10 years."

Yet 4–County now asserts in its memorandum that "the consideration for the modification was *not* that 4–County could participate in the GCP until September 1995, but that 4–County could participate *in any program* being offered by TVA (emphasis added)." Of course, to the extent that plaintiff might claim that the consideration for its agreeing to a longer termination notice period was that it be allowed to participate in the GCP and any extensions thereof, plaintiff's claim fails because the EGCP was not an extension of the EGCP. And, as fully explained *supra*, at the time it agreed to the supplement, 4–County had no reasonable basis for expecting that it would be allowed to participate in *any* program that TVA might offer in the future without complying with the conditions validly established by TVA for participation in such programs.

■ TVA is also entitled to summary judgment on plaintiff's uncharged assertion of equitable estoppel. In its memorandum in support of its motion for summary judgment, 4–County states that TVA should be estopped from denying 4–County participation in the EGCP because TVA induced 4–County to change its position to its detriment. But plaintiff has not identified any particular act or omission of TVA on which 4–County could have relied to its detriment, and it certainly has not shown that TVA made any "affirmative act of misrepresentation or concealment of a material fact." *Bolt v. United States,* 944 F.2d 603, 609 (9th Cir.1991) ("[E]ven assuming estoppel could be applicable [against the government], the Court has indicated that there must be a showing of affirmative misconduct on the part of the government.").

■ For all of the foregoing reasons, the court concludes that 4–County's motion for summary judgment should be denied, and that TVA's motion for summary judgment is due to be granted. That leaves for consider-

---

7. *See supra* note 6.

8. TVA argues that 4–County's unconscionability claim fails as a matter of law because 4–County has pleaded and admitted that it agreed to the ten-year notice period in exchange for being eligible to participate in the original GCP for which it is still being compensated.

9. For the reasons that the court has fully discussed with respect to plaintiff's other claims, the court would have granted summary judgment for TVA on this claim in any event.

ation 4–County's motion to dismiss or, in the alternative, for summary judgment on TVA's counterclaim. In count one of its counterclaim, brought against 4–County and the members of its board of directors, TVA requests the entry of a declaratory judgment that the power contract and supplement are valid and binding, that 4–County is required to purchase its power requirements from TVA through December 2003 and that the judgment be enforced by an injunction directing the counterdefendants to comply with the terms of the contract. In the alternative, counts two and three allege, respectively, that if 4–County ceases to purchase power from TVA before December 2003, then TVA is entitled to a return of payments made by TVA to 4–County under the GCP and to the value of its unrecovered investment made to serve 4–County and its customers. It is readily apparent that counts two and three are not ripe for adjudication, even if viewed solely as seeking declaratory relief. While it is possible that 4–County might in the future, for one reason or another, cease purchasing power from TVA prior to the expiration of the parties' contract, judicial intervention based on that mere possibility would be grossly premature and is wholly unwarranted. *See American Medical Ass'n v. Bowen,* 857 F.2d 267, 272 (5th Cir.1988) ("The ripeness doctrine is necessary to prevent courts from becoming entangled in abstract disputes by adjudicating an issue prematurely.").

 TVA maintains in response to 4–County's motion that count one of its counterclaim is proper pursuant to the Declaratory Judgment Act because it represents a justiciable "case or controversy." *See* 28 U.S.C. § 2201. To the extent that TVA's claim respecting the validity of the contract is merely the converse of 4–County's claim of invalidity, it arguably encompasses a proper claim for declaratory relief. *But,* to the same extent, it is also wholly repetitious of the issues already before the court and hence is unnecessary; in fact, by the court's having ruled against 4–County on each of its claims, the court has effectively granted to TVA the relief sought by this part of its counterclaim. Thus, the claim may properly be stricken. *See Green Bay Packaging, Inc. v. Hoganson*

*& Assoc., Inc.,* 362 F.Supp. 78 (N.D.Ill.1973) (since counts one and three of counterclaim merely restated issue already before court, such repetitious and unnecessary pleadings should be stricken). Finally, to the extent that TVA's counterclaim might seek to raise an issue of validity of the contract beyond that which is placed at issue by 4–County's pleading, then there is no actual case or controversy within this court's jurisdiction. Plaintiff's motion to dismiss or, in the alternative, for summary judgment will therefore be granted.

Based on the foregoing, it is ordered that 4–County's motion for summary judgment is denied, and its motion to dismiss or, in the alternative for summary judgment is granted. It is further ordered that TVA's motion for summary judgment is granted.

ORDERED.