The ESTATE OF George STEWARD, et al., Plaintiffs,

v.

Andrew MCCAY, et al., Defendants.

Civil Action Number No.
5:15–cv–00653–AKK

United States District Court,
N.D. Alabama, Northeastern Division.

Signed March 24, 2016

Christy W. Graham, Thomas B. Denham, Thomas B. Denham LLC, Moulton, AL, for Plaintiffs.

Cecil B. Caine, Jr., Robert V. Goldsmith, III, Caine Goldsmith, Moulton, AL, C. Crews Townsend, Carlos C. Smith, Kyle J. Wilson, Larry L. Cash, Travis R. Thompson, Miller & Martin PLLC, Chattanooga, TN, for Defendants.

### MEMORANDUM OPINION
### AND ORDER

ABDUL K. KALLON, UNITED STATES DISTRICT JUDGE

The court has for consideration a motion to dismiss, doc. 11, filed by Joe Wheeler Electric Membership Corporation ("JWEMC") and the members of the JWEMC Board of Trustees [1] ("the Board")

---

1. Members of the JWEMC Board of Trustees—and defendants in this case—are Andrew McCay, Wayne Anderton, Jimmie Halbrooks, Linda Owens, Charles Segars, Charles Teague, Ray Long, Shirley Livingston, Milton Taylor, Richard Knouff, George Kitchens, and Patrick Holms.

(collectively, "JWEMC"), and supported by intervenor-defendant Tennessee Valley Authority ("TVA"), doc. 33. This motion is now fully briefed and ripe for review. Docs. 11–1; 33; 35; 37; 38. After a review of the motion, briefings, and relevant case law, this court concludes that the motion to dismiss is **GRANTED** as to the claims based on JWEMC's alleged failure to issue patronage refunds or reduce rates.

## I. STANDARD OF REVIEW

■ Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

■ Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (citations omitted) (internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

## II. FACTUAL ALLEGATIONS

Plaintiffs in this putative derivative class action are all current or former members of JWEMC, a 501(c)(12) tax-exempt corporation organized under Ala. Code § 37–6–1 *et seq.* operating as an electric cooperative that purchases electricity from the TVA and sells it to community members in Lawrence and Morgan Counties. Doc. 1–1 at 4–5, 8. Plaintiffs have brought this action alleging that JWEMC has failed to properly refund patronage capital in the form of reduced rates or "patronage credits" under Ala. Code § 37–6–20, to maintain and oversee proper accounting, and to allow for inspection of accounting records. *See generally* doc. 1–1. As a cooperative, JWEMC is member owned and is managed by a board of trustees. *Id.* at 10–11. The plaintiffs in this putative class action are current or former members of JWEMC: Christie Oakley, a present JWEMC member; Ted Agee, a former JWEMC member; and The Estate of George Steward, representing George Steward, who at the time of his death was a JWEMC member. *Id.* at 4–5. Intervenor-defendant TVA contracts with JWEMC to provide power throughout JWEMC's territory. *See* doc. 11–2. The Tennessee Valley Authority Act of 1933 ("the Act") created the TVA to harness and distribute power throughout the Ten-

nessee Valley region. 16 U.S.C. § 831 *et seq.*

### JWEMC Structure and Relevant Bylaws

██ JWEMC is managed by a board of trustees responsible for the "activities and affairs" of the cooperative and for "exercising all of [its] powers," except actions prohibited by law or reserved for its members.[2] *See* doc. 11–3 at 10. Specifically, the board of trustees "shall have the power to make, adopt, amend, abolish and promulgate such policies, ... rate classifications, [and] rate schedules, ... not inconsistent with law or the Articles of Incorporation or [JWEMC's] Bylaws." *Id.* at 13. Relevant here, the JWEMC bylaws state that excess revenues "shall be distributed by [JWEMC] to its members either as patronage refunds ... or by way of general rate reductions, or by a combination of such methods." *Id.* at 17. However, notwithstanding the requirement for patronage refunds or rate reductions, at the time of Plaintiffs' filing of this lawsuit, JWEMC had "amassed in excess of $83 million ... in excess margins." *See* doc. 1–1 at 11.

### TVA's Structure and Powers

██ Created under the Act, the TVA is a "constitutionally authorized corporate agency and instrumentality of the United States." *Bobo v. AGCO Corp.,* 981 F.Supp.2d 1130, 1137 (N.D.Ala.2013); *see also Springer v. Bryant,* 897 F.2d 1085, 1089 (11th Cir.1990) ("The TVA is a federally owned corporation that acts as an agency or instrumentality of the United States."). Congress, through the Act, has vested the TVA with the power to produce, distribute, and sell electric power. *See* 16 U.S.C. § 831 *et. seq.* The law is well settled that the power produced by the TVA is property of the federal government,[3] which has vested the TVA with the power of distribution. *See Mobil Oil Corp. v. TVA,* 387 F.Supp. 498, 507 n. 22 (N.D.Ala.1974) ("TVA in marketing electricity is disposing of property of the United States under policies laid down by Congress.") (citing *Ashwander v. Tenn. Valley Auth.,* 297 U.S. 288, 336, 56 S.Ct. 466, 80 L.Ed. 688 (1936)) (additional citations omitted). Specifically, the Act authorizes the TVA Board of Directors to sell "surplus power not used in its operations ... to States, counties, municipalities, corpora-

---

2. The court may properly consider the JWEMC bylaws without converting the defendants' motion to dismiss into a motion for summary judgment because the bylaws are referred to in the complaint and are "central to ... Plaintiff[s'] claim." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997) (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993)).

3. The Property Clause vests Congress with the "Power to dispose of and make all needful Rules and Regulations respecting ... Property belonging to the United States[.]" U.S. Const. art. IV, § 3, cl. 2. As such, Congress is empowered to "limit the disposition" of its property in a "manner consistent with its views of public policy," *see United States v. City & Cnty. of San Francisco,* 310 U.S. 16, 30, 60 S.Ct. 749, 84 L.Ed. 1050 (1940), be-

cause "the power of Congress to dispose of any kind of property belonging to the United States" is "without limitation," *Alabama v. Texas,* 347 U.S. 272, 273, 74 S.Ct. 481, 98 L.Ed. 689 (1954) (per curiam) (citation and internal quotations omitted). Moreover, under the Property Clause, Congress may delegate to a federal agency the responsibility and management of federal property. *See, e.g., United States v. Cassiagnol,* 420 F.2d 868, 876 (4th Cir.1970) ("Under [the Property Clause] Congress delegated the authority to make regulations governing the operation, maintenance and use of government property to the [General Services Administration]."); *United States v. Bohn,* 622 F.3d 1129, 1134 (9th Cir.2010) ("[T]he grant of rule-making authority to the [National Park Service to regulate the use of federal parks] did not exceed congressional power under the Property Clause.").

tions, partnerships, or individuals ...."
§ 831i. Pursuant to this authority, the Act empowers the TVA to enter into distribution contracts and "to include in any contract for the sale of power such terms and conditions, including resale rate schedules, and to provide for such rules and regulations as in its judgment may be necessary or desirable for carrying out the purposes of this [Act]." *Id.*

### JWEMC–TVA Contract[4]

To provide electricity to its members, JWEMC purchases power for sale to customers from the TVA subject to the terms and conditions outlined in the JWEMC–TVA contract. *See generally* doc. 11–2. This contract, which the parties initially entered in 1977, specifies that JWEMC's rates for sale to customers must be set in accordance with TVA rate schedules. *Id.* at 1, 6–7. In relevant part, the contract states:

> (b) [JWEMC] agrees to serve consumers, including all municipal and governmental customers and departments, *at and in accordance with the rates, charges, and provisions set forth [in the TVA rate schedules] and not to depart therefrom* except as the parties hereto may agree upon surcharges, special minimum bills, or additional resale schedules for special classes of consumers or special uses of electric energy, and except as provided in subsection (c) next following.

*Id.* at 6 (emphasis added). Additionally, this contract outlines JWEMC's use of revenues and excess rates and requires:

> (a) [JWEMC] agrees to use the gross revenues from electric operations for the following purposes:

> (1) Current electric system operating expenses, including salaries, wages, cost of materials and supplies, taxes, power at wholesale, and insurance;

> (2) Current payments of interest on System Indebtedness, and the payment of principal amounts, including sinking fund payments, when due; and

> (3) From any remaining revenues, reasonable reserves for renewals, replacements, and contingencies; and cash working capital adequate to cover operating expenses for a reasonable number of weeks.

> (b) All revenues remaining over and above the requirements described in subsection (a) of this section shall be considered surplus revenues and may be used for new electric system construction or the retirement of System Indebtedness ... provided, however, that resale rates and charges shall be reduced from time to time to the lowest practicable levels....

*Id.* at 6–7. Moreover, the JWEMC–TVA contract requires that "no discriminatory rate, rebate, or other special concession will be made or given to any customer, directly or indirectly." *Id.* at 6.

### Plaintiffs' Demand on the Board

On February 4, 2015, Plaintiffs submitted a demand on the Board seeking to notify the members that, in Plaintiffs' view, the Board "makes no effort to account for, re[s]olve[,] or otherwise manage patronage capital in accordance with state law and applicable federal tax regulations." Doc. 1–1 at 12–13, 33–36. Plaintiffs also

---

4. The court may properly consider the JWEMC–TVA contract without converting the defendants' motion to dismiss into a motion for summary judgment because it is referred to in the complaint and is "central to ... Plaintiff[s'] claim." *Brooks,* 116 F.3d at 1369 (citing *Venture Assocs. Corp.,* 987 F.2d at 431.

alleged that the Board had failed to: provide proper accounting, manage and account for patronage capital in violation of JWEMC bylaws, and maintain open and accurate records of patronage capital. *Id.* at 34. In this letter, Plaintiffs notified the Board of its alleged violation of Internal Revenue Service protocols, specifically that the organization must "keep adequate records of each member's rights and interest in the organization's assets" and "distribute any savings to members" and that the organization was prohibited from "retain[ing] more funds than it needs to meet current losses and expenses" and "forfeit[ing] a member's right and interest in the organization upon termination of membership." *Id.* at 35. The letter also included the following statement regarding patronage capital:

> Pursuant to an agreement with the [TVA], JWEMC is not permitted to refund patronage capital credits. However, [JWEMC] has in place no policy with regard to evaluating the value of such credits to determine whether a reduction in rates is appropriate in light of the accrued patronage capital.

*Id.* at 35. Finally, the letter closed with a demand to remedy the purported issues with the allegedly faulty accounting and management of patronage capital and demanded that the Board provide an accounting to Plaintiffs within thirty days.

*The JWEMC Board's Response and the Instant Lawsuit*

On February 10, 2015, JWEMC responded to the demand letter by informing Plaintiffs that the Board had met and appointed a committee of board members to examine and investigate Plaintiffs' grievances. *Id.* at 12. JWEMC, the email promised Plaintiffs, would report the results of the Committee's findings to the full Board at a future meeting. *Id.* Roughly two months later, having heard no response from the Board and having re-

ceived "no records of account regarding Plaintiffs' patronage credits," Plaintiffs filed suit in Lawrence County, Alabama. *Id.* at 1, 13. This case was subsequently removed to this court. Doc. 1.

## III. ANALYSIS

On behalf of themselves and others similarly situated, Plaintiffs bring eight claims against JWEMC and the TVA: (1) breach of fiduciary duty (Count I); (2) declaratory judgment (Count II); (3) breach of contract (Count III); (4) willful violation of the law (Count IV); restitution for money had and received (Count V); refusal to allow access to corporate books and records (Count VI); negligence (Count VII); and injunctive relief (Count VIII). Defendants' motion seeks dismissal of all claims.

### a. Claims Relating to the JWEMC–TVA Contract are Non-Justiciable

Because Plaintiffs are asserting that they were improperly denied patronage capital (in the form of a failure to issue patronage refunds or reduce rates), the court must first evaluate whether it has the authority to review the TVA's rates—and, therefore, the JWEMC–TVA contract.

▉▉▉ Parties may seek judicial review of agency action unless the relevant "statute[ ] preclude[s] such review," or unless the "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). The Supreme Court has specified at least two occasions in which the latter exclusion applies: first, "in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply," *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (internal quotations and citations omitted), and second, when "the statute is drawn so that a court would have no mean-

ingful standard against which to judge the agency's exercise of discretion" because "the statute ... can be taken to have 'committed' the decisionmaking to the agency's judgment absolutely," *Heckler v. Chaney,* 470 U.S. 821, 828, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). In the Eleventh Circuit, "[w]hether an agency action is reviewable under § 701(a)(2) is a matter of subject matter jurisdiction." *Animal Def. Fund v. U.S. Dep't of Agric.,* 789 F.3d 1206, 1214 (11th Cir.2015) (relying on *Lenis v. U.S. Attorney Gen.,* 525 F.3d 1291, 1293–94 (11th Cir.2008)); *but see Sierra Club v. Jackson,* 648 F.3d 848, 853–54 (D.C.Cir.2011) (holding that agency decisions excluded from judicial review by § 701(a)(2) are not justiciable because relief cannot be granted but that courts still retain subject matter jurisdiction over such controversies).

 The Act empowers the TVA to enter into contracts and the TVA Board of Directors to sell "surplus power not used in its operations ... to States, counties, municipalities, corporations, partnerships, or individuals ...." § 831i. Pursuant to this authority, the Act authorizes the TVA to enter into distribution contracts and "to include in any contract for the sale of power such terms and conditions, including resale rate schedules, and to provide for such rules and regulations *as in its judgment may be necessary or desirable for carrying out the purposes of this [Act]." Id.* (emphasis added). Given the broad sweep of this vesting statute, the Act has given this court "no meaningful standard" against which to evaluate the agency's exercise of discretion because the terms of TVA's contracts have been "committed" to their judgment "absolutely." *Cf. Mobil Oil Corp.,* 387 F.Supp. at 507 ("Instead of

providing for judicial review, Congress has retained oversight of TVA's rates and its contracts with respect thereto in its own hands."). Perhaps not surprisingly, then, "[i]t is well established by a long and unbroken line of cases that TVA's rate-making activities are not subject to judicial review." *See, e.g., Siegelman v. Tenn. Valley Auth.,* No. 87–AR–2224–M, slip op. at 7 (N.D.Ala. Aug. 18, 1988); *Mobil Oil Corp.,* 387 F.Supp. at 508 ("The [Act] vests discretion in the board in fixing such rates, and the exercise of this discretion is not subject to judicial review."); *McCarthy v. Middle Tenn. Elec. Membership Corp.,* 466 F.3d 399, 405 (6th Cir.2006) ("A long line of precedent exists establishing that TVA rates are not judicially reviewable.") (internal quotations and citations omitted); *Ferguson v. Elec. Power Bd. of Chattanooga, Tenn.,* 378 F.Supp. 787, 789 (E.D.Tenn. 1974) ("[T]he matter of rate setting under the [TVA] is not subject to judicial review.") *aff'd,* 511 F.2d 1403 (6th Cir.1975). As such, neither the rates in this contract—nor the contract overall—are reviewable by this court.[5] *See Mobil Oil Corp.,* 387 F.Supp. at 509 ("Indeed, the nonseparability of power rates and the customer's contract to pay those rates [is] made clear by the TVA Act itself"); *McCarthy,* 466 F.3d at 407; *4–Cty. Elec. Power Ass'n v. Tenn. Valley Auth.,* 930 F.Supp. 1132, 1138 (S.D.Miss.1996) ("[D]eterminations about the ... terms and conditions of TVA's power contracts ... are part of TVA's unreviewable rate-making responsibilities.").

 Moreover, this court may not review JWEMC's *enforcement* of the JWEMC–TVA contract either, because

---

5. Indeed, Plaintiffs recognize this in both their briefing ("The Plaintiffs are not seeking to challenge the authority of TVA to set rates," doc. 35 at 11–12) and in their demand letter to the Board ("Pursuant to an agreement with the Tennessee Valley authority, JWEMC is not permitted to refund patronage capital credits," doc. 1–1 at 35).

"[i]f we were to review [JWEMC's] actions in enforcing the contract, we would still be reviewing the TVA's actions and thus ignoring the ... prohibition on judicial review." *See McCarthy*, 466 F.3d at 407 (declining to review claims—such as breach of fiduciary duty or failure under Tenn.Code Ann. § 65–25–12 to issue patronage refunds—related to the enforcement of an electric cooperative's contract with the TVA); *Mobil Oil Corp.*, 387 F.Supp. at 511 ("[T]he Court is of the firm opinion that the power availability contract in the case sub judice is inextricably part and parcel of the rate making function entrusted to the discretion of the TVA, and not subject to judicial review...."); *Allen v. Elec. Power Bd.*, 422 F.Supp. 4, 6 (M.D.Tenn.1976) ("By parity of reasoning, the imposition of the rate adjustment schedules by TVA's distributors pursuant to their contracts with TVA are likewise not reviewable."). As such, the court cannot review JWEMC's decision not to issue patronage rebates because although, as Plaintiffs point out, the JWEMC–TVA contract language outlines that surplus revenues "may" be used in various listed ways and does not expressly prohibit pa-

tronage refunds, "[p]atronage refunds are in substance an indirect form of reduced rates." *United States v. Pickwick Elec. Membership Corp.*, 158 F.2d 272, 277 (6th Cir.1946); *Lake v. Marshall–DeKalb Elec. Coop*, No. 4:15–cv–00339–VEH, 2015 WL 2354384, at *3 (N.D.Ala. May 14, 2015) ("[I]t is clear that the issue of rate-making is not separable from that of excess revenues. A refund of revenues is more or less functionally equivalent to a rate reduction...."). Therefore, Plaintiffs' argument that patronage funds are distinct from reduced rates misses the mark, as JWEMC's failure to issue patronage refunds is, in fact, inextricably related to TVA's rate-setting power and its power to enforce the JWEMC–TVA contract and is not subject to judicial review.[6] Consequently, the following claims are due to be dismissed in part insofar as those claims are related to JWEMC's failure to issue patronage refunds or rate reductions: breach of contract (Count I); declaratory judgment (Count II); breach of contract (Count III); and injunctive relief (Count VIII). Likewise, the following claims are due to be dismissed in their entirety, as they only request, without more, that this

---

**6.** To the extent that Plaintiffs argue that the JWEMC–TVA contract—and JWEMC's failure to issue patronage refunds—endangers its status as a tax-exempt 501(c)(12) corporation because the IRS requires that cooperatives distribute any additional savings to members, *see* Rev. Rul. 72–36, 1972–1 C.B. 151 (1972), the court finds that Plaintiffs have failed to state an injury in fact. Indeed, Plaintiffs have asserted no showing that JWEMC's 501(c)(12) status has been challenged or is otherwise in jeopardy. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ("[O]ur cases have established that the irreducible constitutional minimum of standing [requires,] [f]irst, [that] the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, ... and (b) actual or imminent, not conjectur-

al or hypothetical[.]") (internal quotations and citations omitted). However, even if the court were to find that it had standing to review this claim, Plaintiffs' argument would fail. Indeed, Rule 72–36 notes that, when determining whether a cooperative has accumulated funds beyond the "reasonable needs of the organization[]," the IRS will examine "the particular circumstances of each case." As such, the court does not see an inevitable conflict between the TVA's rate-setting authority and the IRS's regulations surrounding cooperatives' obligations with excess funds. *Cf. Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974) ("[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.").

court review either the terms of the JWEMC–TVA contract or the enforcement of said contract: willful violation of the law (Count IV); restitution (Count V); and negligence (Count VII).[7]

### b. Remaining State Law Claims

In light of the dismissal of the claims regarding JWEMC and its alleged failure to issue patronage refunds or reduce rates, the following state law claims related to JWEMC's alleged failure to maintain and oversee proper accounting and to JWEMC's alleged failure to allow for inspection of records remain: breach of fiduciary duty (Count I); declaratory judgment (Count II); and injunctive relief (Count VIII). The claim for refusal to allow access to corporate books and records (Count VI) survives in its entirety. Because only state law claims remain, the court notes that federal courts are courts of limited jurisdiction with the power to hear only cases authorized by the Constitution and federal statutes, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 376, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), and that, under 28 U.S.C. § 1367(c)(3), the court may decline to exercise supplemental jurisdiction where, as here, it "has dismissed all claims over

---

7. Moreover, even if these claims could be heard by this court, they are barred by preemption because, in effect, Plaintiffs seek to use state law to impose additional constraints upon the TVA's authority. The "Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land[,] any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, § 1, cl. 2. "It is basic to this constitutional command that all conflicting state provisions be without effect," *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981); indeed, state law is preempted "to the extent that it actually conflicts with federal law." *See English v. Gen. Elec. Co.*, 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). "Conflict preemption," as this type of preemption is known, occurs in two situations: first, "where it is impossible for a private party to comply with both state and federal requirements," *id.* (citing *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963)), and, relevant here, "where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'" *id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)).

Again, Congress has given the TVA the power to distribute federal property in the form of electricity and, further, to contract with other agencies regarding the distribution of that power. Pursuant to this authority, the JWEMC–TVA contract establishes TVA's uni-

lateral control over rate determination, *see* doc. 11–2 at 6 ("[JWEMC] agrees to serve consumers ... in accordance with the rates ... set forth in the [TVA rate schedules] and not to depart therefrom ...."), a fact that Plaintiffs appropriately do not contest: "The Plaintiffs are not seeking to challenge the authority of TVA to set rates," doc. 35 at 11–12. Indeed, imposing laws related to fiduciary duties (Count I), cooperatives' patronage refunds under Ala. Code § 37–6–20 (Count II), breaches of contract (Count III), torts (Counts IV and VII), restitution (Count V), or injunctive relief (Count VIII) upon JWEMC and requiring the cooperative to reduce rates or issue patronage refunds would, therefore, alter the terms established in the contract between JWEMC and the TVA. *See* doc. 1–1. This alteration of contractual terms would reduce TVA's established and subscribed-to rate schedule and would conflict with the TVA's efforts to achieve the "full purposes and objectives of Congress." *See Ferguson*, 378 F.Supp. at 789–90 ("[U]nder the supremacy clause ..., the Congressionally granted rate making authority of the [TVA] is not subject to modification or interference by state legislation.") (citations omitted). As such, any imposition of Alabama law that requires JWEMC to reduce rates or issue patronage refunds is preempted under the Act. *See Murphy v. Dulay*, 768 F.3d 1360, 1367 (11th Cir.2014) ("[A] federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation.") (internal quotations and citations omitted).

which it has original jurisdiction," *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("[I]f the federal claims are dismissed before trial ... the state claims should be dismissed as well."). This court exercises its discretion to decline supplemental jurisdiction in this case. Accordingly, as a matter of judicial economy, convenience and fairness to litigants, respect of the plaintiff's choice of forum, and comity, the remainder of this case should be remanded to the Circuit Court of Lawrence County, Alabama.

## CONCLUSION AND ORDER

For the aforementioned reasons, JWEMC's motion to dismiss, doc. 11, is **GRANTED** with respect to the claims based on JWEMC's alleged failure to issue patronage refunds or reduce rates, and those claims are accordingly **DISMISSED WITH PREJUDICE**. The state claims related to JWEMC's alleged failure to maintain and oversee proper accounting and alleged failure to allow for inspection of records in the claims for breach of fiduciary duty (Count I); declaratory judgment (Count II); refusal to allow access to corporate books and records (Count VI); and injunctive relief (Count VIII) remain and are **REMANDED** to the Circuit Court of Lawrence County, Alabama.